IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                           No. 06-20033

DANIEL SCOTT OGDEN,

     Defendant.

_____

ORDER GRANTING IN PART AND DENYING IN PART
THE DEFENDANT'S MOTION TO SUPPRESS
_____

On February 9, 2006, the Defendant, Daniel Scott Ogden, was indicted on various charges arising from an alleged sexual encounter with a minor and his possession of images depicting minors engaging in sexually explicit conduct.  Before the Court is the Defendant's Second Motion to Suppress Evidence.  (Docket Entry ("D.E.") No. 62.)  The United States has responded and this motion is now ripe for disposition.  For the following reasons, the motion is granted in part and denied in part.

BACKGROUND

According to the affidavit of Special Agent Stephen Lies, which was attached to the search warrant at issue in this case, the Defendant, a thirty-four year old resident of Memphis, Tennessee, began an Internet relationship with a minor female ("SS") from California on March 17, 2005.  (D.E. No. 63 Ex. A at 7-8.)  SS was 15 when she initially engaged in email exchanges with Ogden.  (Id. at 7.)  During the course of their relationship, she allegedly emailed him pictures of herself "standing fully nude, smiling, or lying on her bed."  (Id.)  According to SS, the Defendant told her he saved those pictures to an external drive.  (Id.)  After SS turned sixteen, she and Ogden began discussing

the possibility of having sexual intercourse.  (Id.)  Agent Lies asserted in his affidavit that those conversations included graphic and specific descriptions of sex acts that the Defendant wished to perform.  (Id.)

On September 16, 2005, Ogden flew to California to meet SS.  (Id. at 8.)  After picking him up from the airport, SS drove the Defendant to a hotel in San Francisco, where they allegedly repeatedly engaged in sexual intercourse.  (Id.)  At some point while Ogden and SS were in each other's company, her parents discovered their relationship and called her on her cell phone.  (Id.)  Subsequently, SS decided to return home. (Id.)  Later that day, Ogden appeared at SS's home and was arrested.  (Id.)

Approximately a week later, Special Agent Lies visited the Defendant's residence in Memphis and spoke with his grandmother, the owner of the house.  (Id.)  She invited investigators into her home and discussed her broken water heater with them.  (Id.)  According to Lies, Ogden's grandmother wanted to show them the damage done by the water heater and took them to a back bedroom where the Defendant stayed.  (Id.; D.E. No. 70 at 76.)   There, Lies observed an external hard drive on the nightstand, as well as other external media on the bed and in an open bag on the floor.  (D.E. No. 63 Ex. A at 8.)  The Defendant's grandmother told the investigators that there was also a computer stored in the attic.  (Id.)  The investigators collected the computer, the external hard drive, and the diskettes found on the bed and in the bag on the floor, and transported them back to their office.  (Id. at 9.)

On October 13, 2005, Magistrate Judge Diane Vescovo signed a search warrant permitting the search of the computer, the external hard drive, and the diskettes.  (Id. at 10-11.)  The warrant was executed on October 21, 2005.  (D.E. No. 63 at 39.)  According to the Defendant, the warrant

was not returned to Judge Vescovo until February 23, 3006, fourteen days after Ogden was indicted. (Id.) The Defendant admits that he received notice of the warrant when the government mentioned it in a March 24, 2006 letter pertaining to Ogden's discovery requests. (D.E. No. 71 at 1.) The Defendant did not request a copy of the warrant at that time. (Id.) He did, however, secure the right to obtain copies of the "discovery materials that are alleged to be contraband (child pornography)." (D.E. No. 20 at 1.) The Defendant was first exposed to the contents of the warrant when the government attached a copy of an earlier version of the document, which was never executed, to its response to Ogden's first motion to suppress. (D.E. No. 63 at 40.) According to the government, Assistant U.S. Attorney Dan Newsom had simply forgotten that the earlier warrant was never executed and that the agents returned at a later date to Judge Vescovo to obtain the search warrant that was ultimately executed. (D.E. No. 69 ¶ 10.) Ogden claims that he did not receive the October 13th warrant until January 2008. (D.E. No. 63 at 40.)

The Defendant now challenges the warrant on the following grounds. First, he argues that "the averments in the affidavit executed by Special Agent Lies were insufficient at law and in fact in order to allow a neutral and detached magistrate to issue a warrant." (D.E. No. 63 at 1.) Second, the evidence must be suppressed because the government failed to provide timely notice of the search warrant in violation of the Fourth Amendment and Rule 41, Federal Rules of Criminal Procedure. (Id. at 36.)

## ANALYSIS

I.    Sufficiency of the Affidavit to Support the Search Warrant

A magistrate who issues a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).  The Supreme Court has held that "an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." <u>New York v. P.J. Video, Inc.</u>, 475 U.S. 868, 875 (1986).  Such a warrant "may not issue based solely on the conclusory allegations of a police officer that the sought-after materials are obscene, but instead must be supported by affidavits setting forth specific facts in order that the issuing magistrate may 'focus searchingly on the question of obscenity.'" <u>Id.</u> at 873-74 (quoting <u>Marcus v. Search Warrant</u>, 367 U.S. 717, 732 (1973)).

The search warrant affidavit signed by Special Agent Lies listed two federal statutes that he believed the Defendant had violated: 18 U.S.C. § 2252(a)(4)(B) (possession of images of a minor engaging in sexually explicit conduct) and 18 U.S.C. § 2423(b) (travel in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor).  (D.E. No. 63 Ex. A at 6.)  Ogden argues that the facts stated in the application for the search warrant and the attached affidavit were insufficient to establish probable cause that he violated either statute.  (D.E. No. 63 at 6, 19.)  The government counters that the search warrant affidavit did establish probable cause as to these offenses and as well as to a third violation, 18 U.S.C. § 2422(b) (using a facility and means of interstate commerce to persuade a minor to engage in sexual acts that constitute a criminal offense), for which he was later indicted and which was listed on the warrant application, although not in the affidavit.  (D.E. No. 69 ¶ 11; D.E. No. 63 Ex. A at 1.)  The Court will address each of these arguments in turn.

A.    18 U.S.C. § 2252(a)(4)(B)

18 U.S.C. § 2252(a)(4)(B) provides that any person who

> knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if--
>
> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (ii) such visual depiction is of such conduct

shall be fined and imprisoned pursuant to 18 U.S.C. § 2252(b)(1).  The term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2)(A) as:

> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (ii) bestiality;
>
> (iii) masturbation;
>
> (iv) sadistic or masochistic abuse; or
>
> (v) lascivious exhibition of the genitals or pubic area of any person;

In this case, the affidavit states that SS allegedly emailed the Defendant pictures of herself "standing fully nude, smiling, or lying on her bed."  (D.E. No. 63 Ex. A at 7.)  Ogden contends that this allegation could support only the charge that he possessed pictures that involved the "lascivious exhibition of the genitals or pubic area" of a minor.  (D.E. No. 63 at 7.)  Based on the facts before it, the Court finds that of the various definitions of "sexually explicit conduct" contained in § 2256(2)(A), only the one set forth in number (v) would potentially encompass the description of SS's poses in the photographs in question.

It is well established that a picture of a nude child, alone, does not establish a violation of § 2252. See e.g., United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999) ("Nudity alone does not fit this description [of 'lascivious exhibition of the genitals or pubic area']; there must be an 'exhibition' of the genital area and this exhibition must be 'lascivious.'"); United States v. Amirault, 173 F.3d 28, 33 (1st Cir. 1999) (stating that § 2252(a)(4)(B) "requires more than mere nudity") (citations omitted); United States v. Knox, 32 F.3d 733, 750 (3d Cir. 1994) ("[N]udity alone is insufficient to constitute a *lascivious* exhibition. No one seriously could think that a Renoir painting of a nude woman or an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws.").

In determining whether an image constitutes a lascivious exhibition of the genitals or pubic area, several circuits, including the Sixth Circuit, in an unpublished opinion, have adopted the so-called Dost factors first articulated in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986). See e.g., United States v. Campbell, 81 Fed. Appx. 532, 536 (6th Cir. 2003) (unpublished) (applying the Dost factors); United States v. Brunette, 256 F.3d 14, 17-18 (1st Cir. 2001) (using the Dost factors to evaluate the existence of probable cause for a search warrant); United States v. Villiard, 885 F.2d 117, 122 (3d Cir. 1989) (adopting and applying Dost factors); see also United States v. Hill, 459 F.3d 966, 972 (9th Cir. 2006) (stating that the Dost factors can be a starting point for judges to use in evaluating images, but are neither exclusive nor conclusive). According to the Sixth Circuit opinion, the Dost factors include

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the

visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the depiction is intended or designed to elicit a sexual response in the viewer.

Campbell, 81 Fed. Appx. at 536 (citing Dost, 636 F. Supp. at 832).

The question before the Court is, therefore, if the magistrate judge made "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], . . . there [was] a fair probability that" images involving the "lascivious exhibition of the genitals or pubic area" of a minor could be found on the Defendant's computer, external hard drive, and diskettes.  Gates, 462 U.S. at 238.  Taking the entire content of Special Lies's affidavit into consideration, the Court finds that there was.  While brief, the description of the photographs in Special Agent Lies's affidavit satisfies at least two of the Dost factors.  Lies indicated that SS was naked in some of those pictures and that at least one of the photographs involved her lying, potentially naked, on a bed, a piece of furniture generally associated with sexual activity.[1]  The descriptions of these pictures, alone, might not have established probable cause to search the Defendant's property.  However, the affidavit includes other allegations that supported Special Agent Lies's suspicion that Ogden had violated 18 U.S.C. § 2252(a)(4)(B).  First, the affidavit mentions that the Defendant had exchanged emails with SS in which they had discussed in graphic detail what sex acts they planned to perform when he came to visit her.  (D.E. No. 63 Ex. A at 3.) The magistrate judge knew, therefore, that the nature of their exchanges was highly sexual and could

---

[1] The Defendant argues that there is nothing inherently sexual about the presence of a bed.  (D.E. No. 63 at 18.)  However, the affidavit indicates not that a bed was present in the room where the pictures were taken, but that SS was lying naked on a bed, an image that is unquestionably sexually suggestive.  (See Doc. No. 63 Ex. A at 3 ("SS sent nude pictures of herself via the Internet.  Some of the pictures depicted SS standing fully nude, smiling, or lying on her bed.").)

rightly assume that the photos accompanying such emails would reflect that subject. Second, the affidavit asserts that Ogden had sent the fifteen-year old flowers on her birthday, further demonstrating that their relationship was not merely platonic and that "[t]here was a fair probability that images were 'so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.'" Hill, 459 F.3d at 972 (quoting United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987)).

Thus, when the descriptions of the photographs sent by SS are considered along with all the other information in the affidavit, the Court holds that the magistrate judge's finding of probable cause was justified. See United States v. Greene, 250 F.3d 471, 479 (6th Cir. 2001) ("Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.") (citation and internal quotation marks omitted); see also United States v. Hernandez, 183 F. Supp. 2d 468, 475-77 (D.P.R. 2002) (holding that the description of a photo of a nude young girl trying on a ballerina outfit did not alone establish probable cause that the Defendant possessed child pornography; however, when combined with evidence of his conduct towards young girls, including the fact that he invited young girls to his house and asked them to take off their shirts and that he also stared intensely at children, there was a substantial basis for the magistrate judge's finding of probable cause); cf Brunette, 256 F.3d at 19 (concluding that there was no basis for a warrant when the affidavit relied on by the magistrate judge did not describe the photographs at issue, but merely asserted that the pictures met the statutory definition of child pornography, and there was *no* other evidence to support the warrant).

B.    18 U.S.C. § 2423(b)

18 U.S.C. § 2423(b) provides that

> [a] person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

The term "illicit sexual conduct" is defined as "a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States." Id. § 2423(f).[2] Chapter 109A covers a range of different sexual offenses. See 18 U.S.C. §§ 2241-2248. Special Agent Lies's affidavit does not specify which of these crimes he suspected Ogden of traveling to California to commit and the Defendant was not ultimately charged with violating § 2423(b). (See. D.E. No. 1.)

---

[2] Section 2246 defines a "sexual act" as

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(2). The affidavit alleges that Ogden and SS had sexual intercourse repeatedly during their encounter in California. (D.E. No. 63 Ex. A at 8.) Thus, there is no question that the acts claimed to have been engaged in between the Defendant and the minor were "sexual act[s]" as defined by § 2246.

Ogden assumes that the only applicable section to these facts is § 2243(a), which prohibits engaging in a sexual act with a minor who is between the ages of twelve and sixteen and who is also four years younger than the perpetrator. The Defendant contends that because the affidavit unambiguously states that he knew that SS was sixteen when he traveled to California, there was no probable cause to suspect him of violating § 2423(b). At least one district court has agreed with Ogden's argument, holding that "§ 2423(b) does not prohibit interstate travel with a purpose to engage in consensual sex with a 16 or 17-year old minor." United States v. Kelly, No. 99-10100-01, 2000 WL 433093, at *1 (D. Kan. Mar. 2, 2000). However, one district court in this Circuit has explicitly rejected Kelly's conclusion, finding that

> it was the intent of Congress in enacting § 2423 to raise the protected age of the victim to 18, where the defendant travels in interstate commerce with the intent to engage in any of the sex acts enumerated in § 2246 with the victim, and to eliminate the affirmative defense [established by § 2243(c), that the defendant reasonably believed that the other person had attained the age of 16 years]. In the view of the court, the ambiguities are the result of poor statutory drafting. The court can see no other reason why Congress would have provided for the age of 18 in § 2423(b) if this were not its intent. The court concludes that the cross reference to Chapter 109A was merely to make reference to the prohibited sex acts, but that it intended to raise the protected age and to eliminate the affirmative defense.

United States v. Kimberly, No. CRIM.A.05-17-WOB, 2005 WL 1244977, at *2 (E.D. Ky. May 25, 2005) (Bertelsman, J.); see also United States v. Curtin, 489 F. 3d 935, 960 n.14 (9th Cir. 2007) (en banc) (Kleinfeld, J., concurring) ("The statute [§ 2423(b)] is broad, and it is not apparent why it would not apply to a college freshman arranging a date and driving across state lines intending to have sex with a 17 year old high school senior boyfriend or girlfriend.").

Because the Defendant was ultimately not charged with a violation of 18 U.S.C. § 2423(b), the Court need not decide which interpretation of the statute is correct. Both holdings appear to have

some rational bases for these differing interpretations. Thus, because it is reasonable to believe that Magistrate Judge Vescovo was persuaded by the same reasoning as Judge Bertelsman, she easily could have concluded "there [was] a fair probability" that evidence of a crime would be found in the property searched. See Gates, 462 U.S. at 238. Furthermore, the conduct identified in the affidavit supporting the magistrate judge's finding that Ogden violated § 2423(b) also lent credence to the conclusion that he ran afoul of 18 U.S.C. § 2422(b), another statute listed on the warrant application.

> Section 2422(b) states that
>
> [w]hoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or *any sexual activity for which any person can be charged with a criminal offense*, *or attempts to do so*, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b) (emphasis added). To violate this statute, Ogden must have intended to persuade or attempt to persuade SS to engage in sexual activity prohibited by law, while using a means of interstate commerce. Unites States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000). According to the affidavit, the Defendant employed email and instant messenging to plan a sexual encounter with SS, a fifteen, and later a sixteen, year-old girl. (D.E. No. 63 Ex. A at 3.) Since SS was a minor, sexual intercourse with her would constitute a violation of section 261.5 of the California Penal Code.[3]

---

[3] Section 261.5(c) of the California Penal Code states that "[a]ny person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony . . . ." An act of unlawful sexual intercourse is defined as "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor," i.e. a person under the age of 18. Id. § 261.5(a).

In light of the affidavit's assertion that the Defendant was engaged in a romantic relationship, conducted largely over the internet, with a minor almost twenty years his junior, and that he had flown to California to have sex with her, there was probable cause to believe that Ogden had violated § 2422(b). The Defendant contends that the affidavit is deficient because it does not show whether these conversations involved Ogden persuading SS to have sex with him. (D.E. No. 71 at 6.) Given their age difference, however, the Court finds that there was at least a "fair probability" that the Defendant was the aggressor. See Gates, 462 U.S. at 238. Furthermore, the affidavit states that SS and Ogden discussed the "sex acts *he* wanted to perform on SS when he came to California to visit her." (D.E. No. 63 Ex. A at 7 (emphasis added).) Thus, because the affidavit provided probable cause to conclude that the Defendant's communications with SS violated § 2422(b), the Court declines to suppress this evidence.[4]

### C.     Whether the Warrant was Overbroad

The Fourth Amendment requires that warrants "*particularly* describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). "[T]he degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." United States v. Ables, 167 F.3d 1021, 1033 (6th Cir. 1999) (citation and internal

---

[4] The Court notes that although the search warrant affidavit does not specifically list § 2422(b), the statute was included on the warrant application. (See D.E. No. 63 Ex. A at 1.) Thus, the Defendant's argument that the citation to § 2422(b) is "ex post" and should therefore be rejected is incorrect. (D.E. No. 71 at 4.) Furthermore, Ogden's speculative argument that because all of their conversations involving the planning of his trip to California may have taken place over the phone, rather than over email or instant messenger, there was no probable cause to issue a search warrant based on a suspected violation of § 2422(b) is without merit. (See id. at 6.) There is no evidence presented to suggest that Special Agent Lies knew, but failed to disclose, that all of these conversations took place on the phone, nor is there any evidence that he had any reason to suspect as much.

quotation marks omitted).  A description in a warrant is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit."  Id. (citation and internal quotation marks omitted).

The items to be seized pursuant to the search warrant in this case include 1) any and all correspondence pertaining to pornographic depictions of minors; 2) any pornographic images of minors; 3) any correspondence relating to the transmission of pornographic images of minors via interstate commerce or identifying persons transmitting such images; 4) any records relating to pornographic images of minors that were transmitted through interstate commerce; 5) any documents, records, or lists of names connected with the purchase of such images; 6) any names and addresses of minors depicted in pornographic images; 7) any records reflecting personal contact with minors depicted in pornographic images; 8) any images depicting sexual conduct in which minors are involved; 9) any records tending to show the location of safe deposit boxes or storage facilities where child pornography might be stored; 10) indicia of ownership of the property; 11) records of subscriber accounts with Internet Service Providers and other computer services; 12) any computer files (text or image), including email, instant messages, and "chats," that a) identify the owner of the hard drive and its files; b) contain any image or description of a minor engaged in sexually explicit conduct; c) contain any image or description of any individual engaging in sexually explicit conduct; d) contain any information relating to a minor; e) relate to a communication to or from a minor; or f) relate to a communication to any person about sexual activity with a minor.  (D.E. No. 63 Ex. A at 13-14.)

First, Ogden argues that the language describing these items is overbroad because it is not restricted to the time period during which his relationship with SS took place.  (D.E. No. 63 at 23.)

The Sixth Circuit has held that "[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." United States v. Ford, 184 F.3d 566, 576 (6th Cir. 1999) (citations omitted). In Ford, the search warrant affidavit did not indicate that the defendants had engaged in any criminal activity before December 1991, and yet agents seized incriminating documents dating from as far back as 1984 that bore *no* relation to the crimes giving rise to the search warrant. Id. at 576-77. The court held that the seizure of those documents was a violation of the defendants' Fourth Amendment rights. Id. at 578.

This case differs from Ford, however, because the search warrant at issue was tailored narrowly enough that it did not permit the seizure of evidence of *unrelated* crimes, but only those related to the Defendant's alleged possession of child pornography and illegal sexual relationship with a minor. See id. (stating that the portions of the warrant that contained a subject-matter limitation were sufficiently particular, even if they did not contain a time limitation). The Sixth Circuit has held that "where contraband is addressed to a particular place, probable cause exists to issue a warrant for the search of that place for similar types of contraband and related materials." United States v. Long, 42 F.3d 1389, at *7 (6th Cir. Nov. 29, 1994) (unpublished). In this case, suspected contraband, namely child pornography, was addressed to the Defendant by email, providing the agents with probable cause to search Ogden's computer and related equipment for similar types of contraband.

Likewise, the Court rejects the Defendant's contention that the search warrant was overbroad because the affidavit only lists a few photographs that SS sent to him, yet the warrant authorized the agents to search for all visual images depicting minors engaged in sexual activity and any documents relating to such images. In support of his argument, Ogden cites United States v. Weber, 923 F.2d

1338 (9th Cir. 1990), wherein the Ninth Circuit held that a warrant was overbroad when it authorized agents to search the defendant's house for any and all child pornography when the affidavit established the following facts: 1) that the defendant had been sent advertising material two years previously which may have contained child pornography; 2) that although he was advised by Customs that they had intercepted the catalog, he had never claimed it; 3) that there was no proof that the defendant had requested the catalog; and 4) that he had "answered a government-generated advertisement for child pornography and ordered materials that were to be delivered by the government just before the execution of the warrant." Id. at 1344. The court held that all child pornography seized from the home, except for the materials the defendant ordered from the government-generated catalog, should have been suppressed. Id. at 1346. However, this case differs from Weber because there is no indication that Special Agent Lies actually knew how many images SS had sent Ogden. It also differs in this regard from another case cited by the Defendant, United States v. Blakeney, 942 F.2d 1001, 1027 (6th Cir. 1991), in which the Sixth Circuit held that a search warrant was overbroad when it allowed officers to search for "jewelry" at a suspected robber's residence, "when an inventory of the items taken during the Bake's Jewelry Store robbery was available to the agent applying for the search warrant." Again, unlike in Blakeney, while the agents investigating Ogden's case knew that he had received some suspected child pornography from SS, they did not know how much.

Furthermore, at least one circuit has held that a search warrant for child pornography stored on a computer need not be restricted to the images that authorities have already seen or know to exist. United States v. Campos, 221 F.3d 1143, 1147 (10th Cir. 2000). Moreover, unlike in Weber, the Defendant's sexual interest in minors was established by more than just the potentially illegal

photos that the agents knew Ogden possessed. In this case, the affidavit also includes details about the length and graphic content of the Defendant's correspondence with SS and the fact that he executed plans to visit her and consummate their relationship. See Long, 42 F.3d 1389, at *10 (refusing to apply Weber where the proof established probable cause that the defendant had a sexual interest in children and was the type of person who would typically possess child pornography at places such as his home).

Ogden also asserts that the search warrant was not tailored to a search for evidence of a § 2422(b) or § 2423(b) violation, because Special Agent Lies did not explain why evidence of any violations of these statutes would be found on any of the devices seized. (D.E. No. 71 at 6.) Again, he speculates that all of their conversations could have taken place over the telephone or may not have been saved onto a computer. (Id.) The Court concludes that this argument has no merit. Given that the affidavit states that SS and Ogden used email and instant messenger, in addition to the telephone, to communicate with each other, there was at least a "fair probability" that their plans would have been discussed through such means and that these emails or instant messages could be retrieved from the Defendant's computer or the other seized devices. See Gates, 462 U.S. at 238. The search warrant, which permitted the seizure of any computer files, including email, instant messages, and "chats," that contained any information relating to a minor, relating to a communication to or from a minor, and relating to a communication to any person about sexual activity with a minor, was not overbroad because the affidavit supported the conclusion that these files existed. (See D.E. No. 63 Ex. A at 7 (stating that SS and Ogden used email and instant messenger to communicate with each other from March 17 to September 13, 2005).)

Next, the Defendant argues that no evidence linked him to the computer found in the attic of his grandmother's house and that nothing in the affidavit supported the search of the 24 diskettes. (D.E. No. 63 at 23.)  The search warrant affidavit states that Ogden and SS's relationship was conducted over the computer and that SS had told authorities that the Defendant was saving pictures of her on his external hard drive.  (D.E. No. 63 Ex. A at 7.)  According to Ogden, the search warrant should have been limited to the external hard drive that the agents found at the Defendant's residence and that SS referred to.  If the only evidence supporting the search warrant were the photographs SS sent to Ogden, the warrant may have been overbroad.  However, the agents also knew of the emails and instant message exchanges, but did not know where they might have been saved.  Furthermore, the facts indicated that the computer and diskettes belonged to Ogden, despite the fact that the house where these items were retrieved was owned by his grandmother.  First, it is undisputed that he lived there as well.  Second, the diskettes were found in his room, and while the computer was stored in the attic, there was no indication in the affidavit that Ogden did not have access to it.  (See D.E. No. 63 Ex. A at 8.)

The Defendant argues that the affidavit deliberately omitted a material fact, namely that Ogden also owned a laptop computer and that the agents had information regarding this computer, not the one found in the attic.  Ogden appears to argue that the magistrate judge would not have found that there was probable cause to search the desktop if she knew that he also had a laptop. (D.E. No. 71 at 8-9.)  The Court disagrees.  Just because the Defendant also owned a laptop does not mean that he could not have saved any of the files at issue onto his desktop.  Because there was probable cause to believe 1) that Ogden had access to the desktop and diskettes and 2) that he was receiving and sending electronic files that would support a violation of § 2252(a)(4)(B), § 2242(b),

and § 2423(b), the search warrant was not overbroad in permitting the computer and diskettes to be searched.

The Defendant also asserts that the search warrant was overbroad because it permits the seizure of any records or documents relating to safety deposit boxes that the Defendant might rent in order to store child pornography, even though nothing in the affidavit supports the contention that he has a safety deposit box for that purpose. (D.E. No. 63 at 29.) The Court agrees that no allegations in the affidavit or search warrant support the conclusion that Ogden might be storing child pornography in a safety deposit box and thus suppresses any such evidence. Unlike in other cases, see e.g., Long, 42 F.3d 1389, at *2, the affidavit at issue here does not contain a statement by the investigating agent that persons having sexual interest in children typically have safety deposit boxes in which they store child pornography.

In addition, some of the language in the warrant is broad enough to include the seizure of images or depictions of adults engaged in sexually explicit conduct, material that is largely protected by the First Amendment. Because the search warrant affidavit does not provide any basis for the conclusion that Ogden violated any obscenity laws other than those related to minors, the Court finds that the search warrant was overbroad in this regard.

Last, the Defendant claims that the warrant was overbroad in permitting the agents to search for indicia of ownership of the computer. In support, he cites Ford, wherein the Sixth Circuit rejected the government's argument that documents that were unrelated to the crimes investigated were justifiably seized because the warrant authorized seizure of all documents proving occupancy, residency, and/or ownership of the premises searched. 184 F.3d at 578 n.4. The court did not, however, hold that such clauses were inherently overbroad, only that they could not be used to seize

evidence that was unrelated to the crimes being investigated. See id. In this case, determining the ownership of the computer, the external hard drive, and diskettes is directly relevant to whether the Defendant is guilty of the crimes described in the warrant application. Thus, any such evidence will not be excluded.

D.    Good Faith Exception

Even if the warrant was overbroad or unsupported by probable cause, however, the Court finds that the majority of the evidence seized is admissible under the good faith exception. The United States Supreme Court has decided that "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate . . . should be admissible in the prosecution's case in chief" even if the warrant was not in fact supported by probable cause. United States v. Leon, 468 U.S. 897, 913 (1984). This "good faith" exception to the exclusionary rule permits the admission of evidence obtained from the execution of an invalid search warrant except:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; [or] (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005) (citing Leon, 468 U.S. at 914-23). The Sixth Circuit has analyzed the third and fourth situations as a single exception to Leon's rule of admissibility. See United States v. Rodriguez-Suazo, 346 F.3d 637, 645 (6th Cir. 2003).

As to the first element, the Court concludes that Special Agent Lies did not knowingly or recklessly include false information in his affidavit. The Defendant argues that his citation of 18

U.S.C. § 2423(b) and his "lengthy discussion of factual allegations" relating to Ogden's trip from Memphis to California "served to mislead the magistrate from the purported reason for the warrant; namely, to search for evidence of child pornography violation." (D.E. No. 63 at 31.) However, as explained above, in light of Kimberly, the Court does not agree that Lies knew that § 2423(b) was inapplicable to the Defendant's conduct. See 2005 WL 1244977, at *2 (holding that it was the intent of Congress in enacting § 2423 to raise the protected age of the victim to 18). Furthermore, the same information relating to Ogden's relationship with SS and his travel plans also provided probable cause to suspect that he had violated 18 U.S.C. § 2422(b), another statute listed on the warrant application. Thus, the Court cannot conclude that Lies included these details simply "to conceal the bare-bones nature of the real allegations" relating to the possession of child pornography. (See D.E. No. 63 at 31.)

Next, the Court holds that Judge Vescovo did not abandon her neutral and detached role as a "magistrate" and serve as a rubber stamp for police activities. The Defendant argues that the magistrate judge must have abdicated her judicial role, in light of the fact that "even a cursory review of the facts and applicable law" would have compelled her to deny the warrant application. (D.E. No. 63 at 33.) In support, Ogden reasserts his argument that there was no probable cause to suspect him of violating § 2423(b) and that there was no evidence linking the diskettes and the computer to any wrongdoing. (Id.) Again, because there was probable cause pursuant to Kimberly to suspect that the Defendant had violated § 2423(b), Magistrate Judge Vescovo did not serve as Special Agent Lies's rubber stamp when she failed to strike § 2423(b) from the warrant and the warrant application. Furthermore, while the diskettes and the computer had not been specifically mentioned by SS as places where the Defendant was storing her photographs, it is undisputed that

the affidavit alleges that a lengthy email and instant messenger correspondence took place between Ogden and SS, which could have been saved to his computer and the diskettes. And, as stated above, both the computer and diskettes were linked to the Defendant.

Ogden also contends that Magistrate Judge Vescovo authorized a wide-ranging search that extended beyond the facts presented to her and was based on vague information. (Id.) However, the search was limited to images and documents relating to child pornography or Ogden's desire to have sexual relationships with minors. Further, the affidavit details specific instances when Defendant received potential child pornography, attempted to convince a minor to have sex with him, and traveled to California to execute that plan. Thus, the allegations are anything but vague.

For the same reasons, the Court concludes that the affidavit is not so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable. The search warrant affidavit provided enough detail for the magistrate judge to conclude that there was a "fair probability" that images involving the "lascivious exhibition of the genitals or pubic area" of a minor could be found on the Defendants' computer, external hard drive, and diskettes, as well as evidence that Ogden had traveled in interstate commerce or used a means of interstate commerce to engage in a sexual relationship with a minor or persuade a minor to engage in a sexual relationship in violation of § 2423(b) and § 2422(b). See Gates, 462 U.S. at 238.

The Court does conclude, however, that two parts of the warrant were so facially deficient that Special Agent Lies could not have presumed they were valid: 1) the clause allowing the seizure of records relating to the Defendant renting a safety deposit box; and 2) the clause permitting seizure of pornographic images involving adults. As explained above, it was clear that the affidavit provided no factual basis to support the finding that Ogden might have a safety deposit box in which

he stored child pornography.  Similarly, there is no allegation in the affidavit that he violated any obscenity law pertaining to adults.  As such, the Court suppresses any evidence that was collected pursuant to those two paragraphs.  See Ford, 184 F.3d at 578 ("[T]he remedy for an overbroad warrant is to sever the overbroad portions of the warrant from those portions that are sufficiently particular.") (citation omitted).

II.    Rule 41 & Timely Notice of the Search Warrant

Rule 41 of the Federal Rules of Criminal Procedure requires that an officer present during the execution of a search warrant "prepare and verify an inventory of any property seized."  Fed. R. Crim. P. 41(f)(1)(B).  "The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."  Fed. R. Crim. P. 41(f)(1)(C).  Furthermore, the officer executing the search warrant must promptly return it, along with a copy of the inventory, to the magistrate judge who executed it.  Fed. R. Crim. P. 41(f)(1)(D).  That judge must, on request, provide a copy of the inventory to the person from whom, or from whose premises, the property was taken.  Id.  Violations of Rule 41 alone do not lead to exclusion unless there is prejudice "'in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed,'" or "'there is evidence of intentional and deliberate disregard of a provision in the Rule.'"  United States v. Searp, 586 F.2d 1117, 1125 (6th Cir. 1978) (quoting United States v. Burke, 517 F.2d 377, 386-87 (2d Cir. 1975).

As previously noted, the government did not return the warrant to Judge Vescovo until February 23, 2006, approximately four months after it was executed.  (D.E. No. 63 at 44.)  The Defendant also claims that he had not received a receipt and that the inventory was too vague, as it

listed essentially all files saved onto the seized equipment: "Computer image & movie files. Computer txt [sic] files. Computer data files." (Id. at 43-44). Ogden argues that he has been prejudiced by the government's deliberate violation of its Rule 41 duties to provide a detailed inventory and a receipt, because he "can not [sic] determine how [Special Agent] Lies executed the warrant without a list of seized files." (Id. at 44.) Furthermore, the Defendant asserts that the government must have acted deliberately, because it has ignored his repeated discovery requests for a "fully and truly detailed inventory of seized files." (Id.) He does not claim that he was prejudiced by the United States' failure to return the warrant to the magistrate judge. (Id.)

There is scant law on the subject of how detailed an inventory of seized items must be in order to satisfy Rule 41. However, at least one court has held that access to the records obviates the need for a detailed inventory. Matter of Searches of Semtex Indus. Corp., 876 F. Supp. 426, 430 (E.D.N.Y. 1995) (citing United States v. Birrell, 269 F. Supp. 716, 722 (S.D.N.Y 1967)). In this case, it is undisputed that Ogden has been provided access to the government's evidence. (See D.E. No. 61.) Furthermore, in light of the fact that the files are his, he is in the best position to know what they contain. See Birrell, 269 F. Supp. at 721 ("A salient circumstance is that the seized property represents defendant's own files and other files allegedly within his possession. While the records are voluminous, surely defendant is in a better position than anyone else to know what documents may be incriminatory or may be useful to the government in securing incriminating evidence."). Last, it appears that the government has recently provided Ogden "with a list of items seized," which contains "6,550 files, many of which are videos." (D.E. No. 61 at 1.)

Because the Defendant has had access to the seized files, has personal knowledge of the files, and was recently given a list of the files, the Court concludes that he has not been prejudiced by the

government's initial failure to conform to Rule 41's requirement that it provide an inventory and receipt of the property seized. The Court also finds that Ogden's argument that the government's omission was deliberate to be without merit, in light of the fact that it provided the Defendant with a list shortly after its February 6, 2008 Rule 16 discovery request, which is, according to the docket sheet, the first time that the Defendant requested that the items seized be described with more particularity. (See D.E. No. 61 (acknowledging receipt of the list).) Furthermore, because the law as to what makes an inventory insufficient is so unsettled, the Court cannot hold that the government's vague descriptions of the items seized, alone, supports the conclusion that it deliberately failed to follow Rule 41(f)(1)(B).

The Defendant also argues that his Fourth Amendment rights were violated by the government's delay in notifying him of the execution of the search warrant. (D.E. No. 63 at 37-43.) In support, he cites United States v. Grubbs, 547 U.S. 90, 99 (2006), for the proposition that the Fourth Amendment provides an ex post facto right to suppress improperly obtained evidence. (Id. at 38.) Ogden argues that the government's failure to provide notice of the execution of its search warrant violated his right to challenge the warrant. (D.E. No. 63 at 37.) However, in light of the fact that Defendant is currently exercising his right to contest the execution of the search warrant, the Court rejects this argument. Furthermore, while it is uncontroverted that the government failed to fulfill its obligations under Rule 41 by not timely providing Ogden with a receipt, copy of the warrant, or inventory, it seems doubtful that the Defendant was unaware of the seizure of his computer, external hard drive, and diskettes. He likely could have surmised that the government was interested in the contents of the computer and might seek a search warrant to access them. At the latest, he was informed by the government of the seizure and the execution of the search warrant

by the government's March 24, 2006 letter, which was sent less than two weeks after his arrest and approximately six weeks after his indictment.  Thus, this is not a situation where the government seized and searched his property surreptitiously, thereby keeping him from challenging the warrant.

<u>CONCLUSION</u>

For the foregoing reasons, the Defendant's motion to dismiss (D.E. No. 62) is GRANTED in part and DENIED in part.  Specifically, the Court excludes any records or documents relating to safety deposit boxes that the Defendant might have rented in order to store child pornography and any images of adults engaged in sexually explicit conduct.  The remaining items seized by the United States are not subject to suppression under the Defendant's motion.

IT IS SO ORDERED this 28th day of May, 2008.

s/  J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE